## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JAMES ZIMMERMAN, MARV PINZON,   )
and WILLIAM G. VAZQUEZ,   )
  )
     *Plaintiffs,*   )
  )
v.   )
  )
ROBERT R. ROCHE, ASHFORD S.   )    Civil Action No.
McALLISTER, FRANK A. FERRARO,   )    09-CV-0605-AT
E. SCOTT PRETORIUS, QUANTUM   )
MEDICAL RADIOLOGY, P.C., U.S.   )
TELERADIOLOGY, L.L.C., U.S.   )
MAMMO, L.L.C., NEUROSTAR   )
SOLUTIONS, INC., NIGHTHAWK   )
PHYSICIAN INVESTORS, LLC,   )
and JOHN DOES 1 through 10,   )
  )
     *Defendants.*   )
_____   )
  )
QUANTUM MEDICAL RADIOLOGY,   )
P.C.,   )
  )
     *Counterclaim-Plaintiff,*   )
  )
v.   )
  )
JAMES ZIMMERMAN, MARV PINZON,   )
WILLIAM G. VAZQUEZ, JOSEPH   )
CHRISTOPHER RUDÉ, III, and GEORGIA   )
IMAGING ASSOCIATES, INC.,   )
  )
     *Counterclaim-Defendants.*   )
_____   )

**DEFENDANTS ROBERT R. ROCHE, ASHFORD S. MCALLISTER, FRANK A. FERRARO, E. SCOTT PRETORIUS, QUANTUM MEDICAL RADIOLOGY, P.C., U.S. TELERADIOLOGY, L.L.C., U.S. MAMMO, L.L.C., AND NIGHTHAWK PHYSICIAN INVESTORS, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND DISCOVERY**

COME NOW Defendants Robert R. Roche, Ashford S. McAllister, Frank A. Ferraro, E. Scott Pretorius, Quantum Medical Radiology, P.C., U.S. Teleradiology, L.L.C., U.S. Mammo, L.L.C., and Nighthawk Physician Investors, LLC (collectively, "Defendants") and respectfully submit this, their Response in Opposition to Plaintiffs' Motion to Extend Discovery, stating as follows:

## INTRODUCTION

Appreciating the unfortunate tendency of discovery disputes to devolve into missives of alleged incivility and hyperbole, Defendants will attempt to keep these opposition papers straightforward, and will avoid responding to Plaintiffs' satellite discussion of the merits and the perceived "value" of their claims.

This case has been pending for almost three years. Defendants have already endured fourteen months of discovery and consented to two prior extensions of the discovery period. During that time, they have gathered and produced tens of thousands of pages of documents (while Plaintiffs have produced less than 800), and completed the overwhelming bulk of their productions in April and July of this year. While not clearly disclosed in

Plaintiffs' Motion, Defendants produced ninety-nine percent of their documents—29,841 pages—by the end of September 2011. This sizable production was supplemented with a mere 313 pages on November 15, 2011, and completed with a further 70 page production on December 16, 2011.

Plaintiffs, however, have chosen to wait until the final four weeks of the twice-extended discovery period to focus on discovery in earnest. Despite Defendants' requests for a concrete list of deponents and dates in early November, Plaintiffs, without having previously taken a single deposition,[1] first circulated an aggressive nine-deposition schedule over the Christmas and New Year's holidays with just twenty-nine (29) days left in discovery. (*See* Nov. 4, 2011 Marshall Email, attached hereto as Exhibit "A"; Dec. 7, 2011 Williams Email, attached hereto as Exhibit "B.")[2] Notwithstanding this timing, in the interests of drawing discovery to a close, Defendants went to extraordinary lengths to meet Plaintiffs' demands and rearranged their holiday schedules to ensure that each of the identified parties could be deposed within the period. Indeed, to

---

[1]     Plaintiffs noticed Defendant Roche for deposition on November 28, 2011, but thereafter withdrew their deposition notice without explanation. Dr. Roche had been on vacation the week he was scheduled to be deposed, but had made arrangements to return for his deposition as originally noticed.

[2]     Because Plaintiffs' Motion is not evidentiary in nature, Defendants are not submitting authenticating affidavits in opposition. That said, Defendants' counsel certifies that the exhibits to this response, and the statements contained herein, are true and correct.

4469396v5

accommodate Plaintiffs' demands, Defendants have flown a witness cross-country to be deposed (at their expense) and produced themselves for painfully long depositions, lasting well past midnight, just to ensure that discovery can be completed so that this case may proceed to resolution.

Despite these efforts, and with just days remaining in discovery, Plaintiffs requested that Defendants *again* extend discovery so that they could begin to designate experts, produce reports, and engage in expert discovery. (*See* Dec. 12, 2011 Email Exchange, attached hereto as Exhibit "C.") When Defendants declined that request, observing that the time for such designations had long passed under the local rules and precedent of this Court, Plaintiffs' clamoring for an extension reached a fever-pitch. *See id.*; *see also* LR 26.2C, NDGa. Indeed, it was only at that point, with a mere three weeks remaining in discovery, that Plaintiffs began to aggressively attempt to unearth alleged imperfections in Defendants' productions that could be used to justify extending discovery (beyond the fourteen months they have already been given).[3]

---

[3] Plaintiffs' assertion that "Defendants' resolute refusal to consent to an extension of the discovery period is a bad faith attempt to restrict discovery and obscure [UST's] value" is puzzling. (See Mot. at p. 12.) Their sole support for this accusation is an email, attached to their Motion as Exhibit S, that Defendants' produced in *April* of this year—eight months ago. At no time between that production and the filing of Plaintiffs' Motion did Plaintiffs ever voice such a concern, nor have Defendants ever attempt to "restrict" Plaintiffs' inquiry into the email.

4

Defendants respectfully submit that nothing about which Plaintiffs now, belatedly, complain suffices as "good cause" to push out an already twice-extended discovery period. *See* FED. R. CIV. P. 6(b)(1); *see also* Guidelines for Parties and Counsel in Cases Proceeding Before the Honorable Amy Totenberg [Doc. 101] at p. 10. Even if Plaintiffs' recently articulated complaints had merit (and they do not), nothing has transpired between the parties' September conference with the Court and today that is so unexpected, unusual, or out of the ordinary to justify a retreat from the parties' unequivocal representation to the Court that "the parties do not anticipate requiring or seeking any further extensions of the discovery period . . . ." (*See* Aug. 10, 2011 Joint Mot. for Extension of the Disc. Period [Doc. No. 79] ¶ 5; Sep. 8, 2011 Minute Entry [Doc. No. 80].) Although Defendants' 30,000-plus page production may not have been entirely flawless (and, when it comes to civil discovery, despite best efforts, absolute perfection is rare), a modicum of diligence on the part of Plaintiffs could have remedied all of the minor "flaws" about which they now complain. Indeed, all of those alleged "flaws" can easily be remedied now—within the existing discovery period—and Plaintiffs do not identify a single document that is still owing.

4469396v5

Simply stated, Defendants have consistently attempted to move this case to resolution for almost three years, and have gone to extraordinary lengths to meet Plaintiffs' onerous discovery demands. The drain this has taken on their organizations has been significant. Plaintiffs' attempt to extend discovery for another three months (for a total of almost a year and a half of discovery)—so that they can only now begin identifying and deposing experts—is not a delay or expense that should be thrust on their adversaries this late in the day. Moreover, their attempt to manufacture discovery disputes to secure such an unnecessary extension of the discovery period should not be rewarded.

## ARGUMENT

Plaintiffs insist that discovery should be extended—yet again—for four reasons. First, they contend that Defendants "belatedly" identified one witness and produced three documents. Second, they contend that Defendants had previously noticed two depositions outside of the period (both on January 13, 2012), and that they have been unable to coordinate the deposition of one witness they would like to depose within the period. Third, they contend that Defendants have made objections to their Rule 30(b)(6) deposition notices. Fourth, they argue that Defendants improperly applied "Attorneys' Eyes Only" designations, but have declined to withdraw certain such designations (which, as

shown herein, is simply untrue).  The number of Plaintiffs' grievances, however,

fails to mask their factual flaws.  Although Defendants regret having to burden

the Court with the tedium of dissecting these arguments, they take this

opportunity to explain the facts so that a muddied record does not result in a

costly extension of discovery that is entirely unwarranted.

**I.    Plaintiffs' Arguments are Without Merit.**

   **A.    Defendants' Production of Seventy Pages and Identification of a
          Records Custodian Does Not Justify an Extension of Discovery.**

Plaintiffs first argue that Defendants "belatedly" produced certain

documents and "belatedly" identified one witness.  This, they argue, warrants a

three month extension of the already twice-extended, fourteen month discovery

period.  For the reasons set forth herein, plainly, it does not.

First, the documents Defendants are alleged to have "belatedly" produced

comprise just three documents—two draft operating agreements and an email[4]—

which, in total, amount to seventy pages.  The two draft operating agreements

were mentioned in the recitals to a finalized operating agreement Defendants

---

[4]    The one-page document Plaintiffs note that Defendants produced on December 16, 2011 was, in fact, an attachment to the email Defendants produced on December 15, 2011.  That page was inadvertently omitted because the name of the attachment was confusingly similar to another attachment in the same document.  Upon discovering this, Defendants promptly retrieved and produced the attachment during a break in the examination, and permitted Plaintiffs the opportunity to examine the author of the one-page attachment during his deposition (which they did).

produced to Plaintiffs in April of this year. Plaintiffs, however, first inquired about those recitals at a deposition—the first they had taken in this case—on December 13, 2011. It was, as Plaintiffs observe, Defendants' understanding that those documents were contained in an earlier production, but, upon hearing Plaintiffs' suggestion that that was not the case, Defendants promptly produced the two draft agreements, within less than forty-eight hours, before the next deposition in this case was set to proceed. What is more, Defendants have offered to make the sole witness that Plaintiffs deposed prior to these documents' production, Dr. Robert Roche, available for a resumed deposition before the close of discovery so that Plaintiffs could inquire about those three documents if they so desire (including on days on which Plaintiffs have already indicated they are available to proceed with depositions). (*See* December 20, 2011 Marshall Email, attached hereto as Exhibit "D.") To date, Plaintiffs have not responded to that offer, which remains outstanding, even though this questioning should take minutes at most.

Similarly, the sole "witness" Defendants recently disclosed, Barbara Duncan, is, as indicated in their Supplemental Initial Disclosures, a records custodian. (*See* Defs.' Supp. Initial Disclosures, attached hereto as Exhibit "E.") Her knowledge, as Defendants have previously explained, is coextensive with

that of Mark Stevens, UST's Chief Operating Officer, whom Defendants identified in their Initial Disclosures, and whom Defendants have elected not to depose. (*See* Exhibit "D.") Nevertheless, Defendants have offered to make Ms. Duncan available, on January 3, 2012—a date that Plaintiffs had previously reserved for a deposition in this matter (but on which they claim the non-party deponent cannot proceed), within the discovery period. (*Id.*) Again, Plaintiffs have not responded to that offer.[5] Nor have they followed up on Defendants' articulated willingness to discuss a stipulation of authenticity of pertinent documents, which would obviate the need for Ms. Duncan's deposition altogether.

Defendants respectfully submit that the late production of three documents, totaling seventy pages, and their recent identification of a records custodian, provide no basis for expanding a fourteen month discovery period

---

[5]     As Plaintiffs also note, Defendants have expressed an interest in deposing a witness Plaintiffs themselves identified late last week as having knowledge regarding Defendants' finances and transactions with one another. This witness, Mr. Dan Muchnick, is an accountant retained as a consultant by Plaintiffs, and never worked for Defendants' organizations. Defendants interest in deposing Mr. Muchnick, therefore, is simply to ensure that Plaintiffs are not attempting to circumvent the rules regarding the designation of experts by having a witness—with no personal knowledge of the facts—opine on matters at issue in this controversy. Needless to say, Plaintiffs should not be able to rely on their own late supplementation of their Initial Disclosures, which first listed Mr. Muchnick as having knowledge of these subjects, to extend the discovery period in this case over their opponents' objections. And, if Plaintiffs are prepared to acknowledge Mr. Muchnick's lack of personal knowledge of those facts, then such a deposition may well be unnecessary.

even further. This is especially true because whatever "prejudice" Plaintiffs claim they suffered from these late productions and/or identification—"prejudice" which they never clearly articulate in their Motion—can be fully remedied by proceeding with the limited continuation of the deposition of Dr. Roche and the deposition of Ms. Duncan *within* the existing discovery period, on dates Plaintiffs previously indicated they were available for depositions, and on which these witnesses and their counsel have committed to be present.

**B.      Defendants' Accommodation to Non-Party Deponents, and Plaintiffs' Tardy Attempt to Schedule a Non-Party Deposition, Should Not be Used to Justify an Extension of Discovery.**

Plaintiffs next argue that Defendants' (now withdrawn) subpoenas for non-party depositions just outside the discovery period warrant an extension of discovery here. No good deed, it appears, goes unpunished.

The subpoenas about which Plaintiffs complain were directed to representatives of Spalding Regional Medical Center and Sylvan Grove Hospital ("Spalding"). As context, Defendants allege that Plaintiffs improperly pursued (and successfully retained) Spalding as a client on behalf of a competing venture—Counterclaim-Defendant Georgia Imaging Associates, Inc.—while they were still employed by QMR. Defendants first inquired about those representatives' availability for deposition in early November, and attempted to

find a date within the discovery period in which those representatives could be deposed.  (*See* Nov. 4, 2011 Marshall Letter, attached hereto as Exhibit "F.")  Spalding's counsel, however, informed Defendants that his clients were largely unavailable during the discovery period, but that *Plaintiffs'* counsel had agreed that their depositions could take place just outside the period.  As a professional accommodation to these non-parties and their counsel, Defendants agreed that those depositions could go forward during the week of January 9, 2012.  (*See* Nov. 16, 2011 Race Email, attached hereto as Exhibit "G.")  That accommodation inured to Plaintiffs' benefit, as Defendants were attempting to honor the scheduling request of Plaintiffs' largest hospital client—a point Plaintiffs conspicuously overlook in their Motion.  Less considerate counsel may have seen that as a point of leverage in litigation.  Yet, it is Defendants' courtesy in accommodating Spalding's request that Plaintiffs now attempt to exploit to obtain still more discovery.  Defendants respectfully submit that it would be an unjust result, and would set a perverse precedent, if their professional accommodations were permitted to now be turned against them.

Even putting that aside, Plaintiffs' argument suffers from another flaw.  As Plaintiffs acknowledge in their papers, Defendants have withdrawn their subpoenas to Spalding.  (*See* Exhibit D.)  Admissions by Plaintiffs at their

depositions rendered such depositions largely unnecessary, and not worth the time and expense associated with inconveniencing these non-parties. Thus, at present, there are no depositions noticed outside the discovery period. Plaintiffs' argument that Defendants' prior willingness to proceed with a half-day of depositions just beyond that period—as a courtesy to Plaintiffs' largest client— hardly justifies an extension of discovery.

Likewise, Plaintiffs' complaint that they have been unable to schedule the deposition of a non-party, Medical Management Professionals ("MMP"), within the discovery period, does nothing to advance their argument. Plaintiffs first raised the prospect of deposing MMP on December 7, 2011. (*See* Exhibit B.) Despite the volume and detail contained elsewhere in their Motion, Plaintiffs are conspicuously unforthcoming about when they first attempted to coordinate deposition scheduling with MMP, which suggests to Defendants that Plaintiffs may not have pursued that deposition as diligently as they should have, particularly given the impending end of the discovery period. (*See* Mot. at p. 14.) Plaintiffs also apparently have made no attempt to place MMP under subpoena. Accordingly, their lack of diligence in attempting to schedule the deposition of a

non-party the week following New Year's should not force all parties to this case into several more months of discovery.[6]

### C. Defendants' Objections to Plaintiffs' Rule 30(b)(6) Notices do Not Justify an Extension of the Discovery Period.

Plaintiffs next argue that Defendants have asserted several objections to their Rule 30(b)(6) notices, which is true. The notices, for the reasons Defendants identified in their objections (and in the cases cited therein), are flawed in many respects, and fail to describe with any particularity the matters about which Plaintiffs wish QMR and UST to testify. *See* FED. R. CIV. P. 30(b)(6) (requiring notice to "describe with reasonable particularity the matters for examination"). Thus, it was incumbent on Defendants to promptly object to the notices. *See* FED. R. CIV. P. 32(d)(1). Insofar as Plaintiffs have raised concerns about any particular objection, moreover, Defendants have provided them with detailed explanations of the bases for those objections, and have yet to hear from Plaintiffs as to why those explanations are inadequate. (*See* Exhibit D.) And, Plaintiffs have not filed any form of motion to compel, which is understandable, because the depositions have yet to take place.

---

[6] That is not to suggest that Defendants wish to obstruct any testimony by MMP. Defendants remain fully prepared to allow that single deposition to take place beyond the discovery period as an accommodation to their adversaries. Such an accommodation, however, requires no wholesale expansion of the discovery period.

13

But, even despite Plaintiffs' objections, Defendants have repeatedly affirmed their commitment to produce a designee to answer questions about those topics, and to take reasonable steps to become educated about those topics (insofar as that is possible, given the vagueness of many of the topics within the notices), even as to those topics Defendants find objectionable. (*See* Exhibit D.) Plaintiffs thus essentially argue that, despite these assurances, Defendants' designee *may* not do enough to prepare for the depositions. Plainly, if Plaintiffs feel that the designee(s) "should have done more" after actually completing the depositions, their remedy is not a wholesale extension of the discovery period, but a motion to continue or compel those particular depositions for further examination.[7] Simply put, unrealized fears that Defendants *may* oppose such a motion based on their objections to Plaintiffs' notices do not suggest that the parties should be subjected to a preemptive extension of the discovery period now.

---

[7]    Given the diligence with which their designee is and will continue to prepare for the depositions, Defendants perceive any *legitimate* objection to their designee's preparedness to be exceedingly unlikely.

### D. Long Withdrawn "Attorneys' Eyes Only" Designations do Not Justify an Extension of the Discovery Period.

Finally, Plaintiffs complain that Defendants have improperly marked certain documents "Attorneys' Eyes Only." Defendants are at a loss to understand how that concern, which Plaintiffs voiced on June 22, 2011, can possibly justify an extension of the discovery period some six months later. What is more, contrary to Plaintiffs' representation that, "[d]espite Plaintiffs' efforts to meet and confer, Defendants have not changed their designations[,]" (*see* Mot. at p. 5), the exact opposite is true. Within six days after Plaintiffs articulated their concerns regarding these designations, Defendants withdrew virtually all of the designations about which Plaintiffs now complain in their papers. (*See* June 28, 2011 Kananen Letter, attached hereto as Exhibit "H.") Plaintiffs attempt to resurrect this issue now, overlooking the fact that Defendants withdrew the challenged designations nearly half a year ago, demonstrates a lack of diligence that cuts strongly against any extension of the discovery period.

### II. If Discovery is Extended at All (which it Should Not), it Should Not be Exploited to Permit the Tardy Identification of Experts.

For all the foregoing reasons, Defendants believe—emphatically—that Plaintiffs have failed to make any case for a third extension of the discovery

period in this case, which has already consumed an oppressively long fourteen months. The cost of Plaintiffs' lack of diligence in pursuing discovery should not be taxed to their adversaries. But, if any of the arguments raised by Plaintiffs are deemed by the Court to have merit, Defendants respectfully request that the discovery period not be reopened or extended for plenary discovery, or for the commencement of expert discovery as proposed by Plaintiffs. Rather, Defendants respectfully request that further fact discovery, if allowed at all, be narrowly tailored to address the precise issues about which Plaintiffs now complain. *See, e.g., Branch v. Life Ins. Co. of N. Am.*, No. 4:09-CV-12 (CDL), 2009 WL 3781217, at *5 (M.D. Ga. Nov. 11, 2009) (reopening discovery for "limited purpose," and holding that "[n]o additional discovery shall be permitted during the extended discovery period").

Due to the inordinate time and expense that expert discovery entails, Defendants are particularly uninterested in extending discovery so that Plaintiffs can belatedly identify "experts" and proceed through laborious and costly expert depositions. The local rules in the Northern District are clear:

> Any party who desires to use the testimony of an expert witness shall designate the expert ***sufficiently early*** in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery

16

> deposition of the second expert might also be conducted prior to the close of discovery.
>
> Any party who does not comply with the provisions of the foregoing paragraph ***shall not*** be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

*See* LR 26.2(C), NDGa. (emphasis supplied). Read in conjunction with FED. R. CIV. P. 26(a)(2)(D) (which contemplates service of rebuttal expert reports thirty days following the identification of an expert), the Northern District's local rules necessarily foreclose expert identification with less than thirty-one days remaining in the discovery period (and that, of course, is based on the highly unrealistic assumption that a rebuttal expert would be prepared and available to give deposition testimony the day following service of the rebuttal report).[8]

Here, Plaintiffs failed altogether to meet the local rule's mandate. Even as of this late date—with just sixteen days left in discovery—they have identified no expert. Indeed, they do not propose doing so for still another two full months. (*See* Mot. at p. 19.) As this Court has repeatedly held, such a delinquent designation of an expert necessarily precludes a litigant from introducing or

---

[8] Critically, even Plaintiffs' *proposed* schedule does not comport with the local rules and Rule 26(a)(2)(D). They wish to identify experts on February 20, 2012, exchange reports (presumably, both original and rebuttal reports, however that may be possible) on March 5, 2012, and then complete expert depositions by April 5, 2012—well over three years after this case began. (*See* Mot. at p. 19.) That timeline—especially from the perspective of the parties that would be charged with identifying rebuttal experts, preparing rebuttal expert reports, and preparing for expert depositions—is totally unrealistic and imbalanced in favor of Plaintiffs.

relying upon expert testimony. *See, e.g.*, *Coyote Portable Storage, LLC v. PODS Enters., Inc.*, Civil Action No. 1:09-CV-1152-AT, 2011 WL 1870593 (N.D. Ga. May 16, 2011) (Totenberg, J.); *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC,* 248 F.R.D. 298, 307-08 (N.D. Ga. 2008) (Duffey, J.); *Carolina Cas. Ins. Co. v. R.L. Brown & Assocs., Inc.*, Civil Action No. 1:04-CV-3537-GET, 2007 WL 174171, at *2-*4 (N.D. Ga. Jan. 19, 2007) (Tidwell, J.); *Williams v. Energy Delivery Servs., Inc.*, Civil Action No. 1:04-CV-3101-CC, 2005 WL 5976570, at *1-*3 (N.D. Ga. Sep. 6, 2005) (Cooper, J.); *Neslehutt v. Am. Indus. Chem. Corp.*, 1:03-CV-1054-ODE, 2005 WL 6033021, at *10-*11 (N.D. Ga. May 5, 2005) (Evans, J.); *Chao v. Oak Tree Adm'rs, Inc.*, Civil Action No. 1:04-CV-0943-BBM, 2005 WL 6008055, at *1-*2 (N.D. Ga. Mar. 3, 2005) (Martin, J.).

Indeed, the similarities between this case and *Coyote Portable Storage, LLC v. PODS Enterprises, Inc.*, Civil Action No. 1:09-CV-1152-AT, 2011 WL 1870593 (N.D. Ga. May 16, 2011), are striking. In *Coyote Portable*, the parties had been given a generous twelve months of discovery, and had extended the discovery period on more than one occasion. *See* 2011 WL 1870593, at *2. Yet PODS designated its expert with just thirty-six days left in discovery, over eleven months after discovery commenced. *Id.* Even though not raised by the parties, this Court, citing LR 26.2(C), NDGa., held the putative expert's testimony was inadmissible,

recognizing that "PODS did not designate [its expert] sufficiently early in the discovery period process to provide [its adversary] adequate time to identify any rebuttal experts without granting an additional extension of discovery." *Id.* at *3.

Here, Plaintiffs' lethargy in designating an expert is all the more unjustifiable. To the extent Plaintiffs claim expert testimony is needed in this case, that fact should have been readily apparent to them from the lawsuit's very inception, given that this controversy has always involved the same core disputes. *See id.* at *2 ("A party's failure to comply with Local Rule 26.2(C)'s disclosure requirement is not justified when the party knew or should have known that an expert was necessary before the late stages of the discovery period."); *see also Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1195 (N.D. Ga. 2005) (Duffey, J.) (holding likewise). Application of complex accounting principles, testimony regarding practices in the field of radiology, and valuation of alleged ownership interests in several distinct entities necessarily involves the opinions of (likely, many) experts. Yet, Plaintiffs went through over thirteen months of discovery without identifying an expert, and do not propose doing so until well over a month *after* the end of the existing discovery period. (*See* Mot. at p. 19.) Defendants respectfully submit that any discovery imperfections about which Plaintiffs now complain—whether real or

manufactured—should not be exploited as a subterfuge to absolve Plaintiffs of their noncompliance with the local rules, which, Defendants offer, is the sole motivation suddenly animating Plaintiffs' litany of grievances.

For all the reasons set forth in these papers, it remains Defendants' position that discovery should end when this Court said it would end—January 5, 2012. (*See* Sep. 8, 2011 Minute Entry [Doc. No. 80].) But, were the Court to afford Plaintiffs any limited additional time to conduct discovery, Defendants respectfully request that such discovery be narrowly tailored to address whatever discrete grounds the Court finds to warrant such an extension. *See, e.g., Branch*, 2009 WL 3781217, at *5. Plaintiffs should not be able to exploit the alleged "imperfections" identified in their Motion to open a new, and costly, chapter of wholesale discovery in a case that has been pending for nearly three years. *Cf. Nestlehutt*, 2005 WL 6033021, at *11 ("Plaintiff is correct that there have been repeated delays in discovery in this case. However, the repeated delays in discovery work against Plaintiff's argument for leniency rather than in favor. The procedural history suggests that Plaintiff has had an exceedingly long discovery period in which to identify an expert, but that he inexplicably provided the expert report at a time in which there could be no doubt yet

another discovery extension would be required to accommodate his testimony.").

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion for an Extension of Discovery be denied.

This 22nd day of December, 2011.

ARNALL GOLDEN GREGORY LLP

/s/ Edward A. Marshall
Henry M. Perlowski
Georgia Bar No. 572393
henry.perlowski@agg.com
Edward A. Marshall
Georgia Bar No. 471533
edward.marshall@agg.com

171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363
Tel: 404.873.8536
Fax: 404.873.8537

*Attorneys for Defendants Robert R. Roche, Ashford S. McAllister, Frank A. Ferraro, E. Scott Pretorius, Quantum Medical Radiology, P.C., U.S. Teleradiology, L.L.C., U.S. Mammo, L.L.C., and Nighthawk Physician Investors, LLC*

4469396v5

## CERTIFICATE OF SERVICE

The attorney whose signature appears below certifies that he has this day filed DEFENDANTS ROBERT R. ROCHE, ASHFORD S. MCALLISTER, FRANK A. FERRARO, E. SCOTT PRETORIUS, QUANTUM MEDICAL RADIOLOGY, P.C., U.S. TELERADIOLOGY, L.L.C., U.S. MAMMO, L.L.C., AND NIGHTHAWK PHYSICIAN INVESTORS, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND DISCOVERY, to which this Certificate is attached, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| David E. Spalten, Esq. | Arthur Daniel Brannan, Esq. |
| Paul G. Williams, Esq. | Scott Andrew Lange, Esq. |
| Daniel A. Cohen, Esq. | DLA PIPER LLP (US) |
| KASOWITZ, BENSON, TORRES & | One Atlantic Center |
| FRIEDMAN, LLP | 1201 West Peachtree Street |
| One Midtown Plaza – Suite 1150 | Suite 2800 |
| 1360 Peachtree Street, N.E. | Atlanta, Georgia 30309 |
| Atlanta, Georgia 30309 | |

This 22nd day of December, 2011.

/s/ Edward A. Marshall
Edward A. Marshall
Georgia Bar No. 471533