## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

**JAMES ZIMMERMAN**, *et al.*,

        **Plaintiffs,**

v.

**ROBERT R. ROCHE**, *et al.*,

        **Defendants.**

**Civil Action No.
09-CV-0605-AT**

## PLAINTIFFS' AND COUNTERCLAIM-DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO EXTEND THE DISCOVERY PERIOD

Plaintiffs James Zimmerman ("Zimmerman"), Marv Pinzon ("Pinzon"), William G. Vazquez (Vazquez") and Counterclaim-Defendants Joe Christopher Rudé, III (Rudé) and Georgia Imaging Associates, Inc. ("GIA") (collectively "Plaintiffs") respectfully submit this Reply Brief in further support of Plaintiffs' and Counterclaim-Defendants' Motion to Extend the Discovery Period.

## PROCEDURAL BACKGROUND

Pursuant to this Court's September 8, 2011 Minute Entry for the proceedings held before the Court [Doc. No. 80] and Local Rule 26.2(B), discovery in this matter currently extends through and including January 5, 2012.  Plaintiffs and Counterclaim-Defendants filed their Motion to Extend the Discovery Period and Supporting Memorandum of Law ("Plaintiffs' Motion") on December 21, 2011,

1

seeking a three-month extension of the discovery period to April 5, 2012. Defendants Robert R. Roche, Ashford S. McAllister, Frank A. Ferraro, E. Scott Pretorius, Quantum Medical Radiology, P.C., U.S. Teleradiology, L.L.C., U.S. Mammo, L.L.C. and Nighthawk Physician Investors, LLC's (collectively, the "QMR Defendants") filed their Response in Opposition to Plaintiffs' Motion to Extend Discovery on December 22, 2011 (the "QMR Defendants' Opposition"). Defendant Neurostar Solutions, Inc. ("Neurostar") filed its opposition brief on December 23, 2011.

## ARGUMENT

As described more fully in Plaintiffs' Motion, Defendants (1) have failed to produce discovery despite repeatedly assuring Plaintiffs they have produced everything requested (and then subsequently repeatedly producing more documents when pressed), (2) objected to virtually every category of noticed 30(b)(6) depositions, and (3) only recently produced important documents and identified a new witness.  Plaintiffs correctly anticipated and treated most of the points the QMR Defendants raised in their opposition brief, therefore Plaintiffs will address only new issues raised in the QMR Defendants' response.

I.    **Defendants' Transparent Attempts To Downplay Their Belated Production Of Key Documents Raise More Issues Than They Answer**

Defendants attempt to downplay the importance of the 2002 and 2004 UST Operating Agreements they withheld from production until the night of December 15, 2011.  This effort is curious; these documents obviously bear directly on Plaintiffs' claims regarding their ownership in UST and the QMR Defendants' tortious usurpation of corporate opportunities.  The first of the belatedly-produced operating agreements was dated 2002 and the second was dated January 2, 2004 – almost three years before the purportedly finalized November 1, 2006 UST Operating Agreement.  (*See* Plaintiffs' Motion, Ex. U.)  Contrary to Defendants' assertion, these documents plainly are not "draft operating agreements" leading to a "finalized operating agreement,"  but in point of fact are obviously partially or wholly executed agreements.  (*See* QMR Defs.' Opp'n, pp. 7-8.)

Moreover, the 2004 Operating Agreement was executed by three of the individual Defendants and the 2002 UST Operating Agreement was executed by at least two of the individual Defendants.[1]  Despite the fact that Defendants Ferraro

---

[1] Defendant Pretorius did not join QMR or UST until 2005, therefore he did not sign either agreement.  While Defendants Ferraro and Roche executed the 2002 UST Agreement, the copy of the agreement Defendants produced does not contain Dr. McAllister's signature on the line above his name. (*See* Plaintiffs' Motion, Ex. U.)

and McAllister have authenticated their signatures on these documents, both disclaim any substantive knowledge of their authorship, circumstances surrounding their creation and signature, any contemporaneous communication surrounding them, whether they were presented to or the subject of discussion with Plaintiffs and whether and why Plaintiff's may have failed to sign them.  (*See* Rough Transcript of Deposition of Frank Ferraro, December 22, 2011 ("Ferraro Dep."), pp. 45-47, 64-69, 73-83, true and correct excerpts of which are attached hereto at Exhibit "B;" Rough Transcript of Deposition of Ashford McAllister, December 23, 2011 ("McAllister Dep."), pp. 72-82, true and correct excerpts of which are attached hereto at Exhibit "C.")  Defendant Roche had already been deposed when Defendants produced these executed operating agreements, therefore Plaintiffs need to re-depose him regarding these documents.

Furthermore, although these documents constitute only a relatively small number of pages of Defendants' total document production, their late production is unduly prejudicial to Plaintiffs' preparation of this case.  As Defendants are attempting to characterize these executed UST Operating Agreements as mere draft documents, further discovery is necessary.  This is particularly important because these may have been the effective operating agreements of UST for almost the entirety of the period at issue in this litigation.  Thus, it is essential that

Defendants identify and educate a witness for UST's 30(b)(6) deposition who can testify regarding these issues, particularly as the 2004 UST Operating Agreement states ownership units of UST were issued to Plaintiffs Zimmerman and Pinzon. In spite of the obvious importance of this designation and testimony, as noted further *infra*, Defendants have made clear they will not require Rule 30(b)(6) designees to know more than they've already testified to in this regard, *i.e.*, nothing!

## II.   Defendants' Protestations That They Have Produced All Responsive Documents Are Belied By Their Repeated Subsequent Productions Of Additional Responsive Documents

Defendants also point to the volume of their document production as if that is a shield protecting them from further scrutiny for their failure to produce responsive documents. Defendants tried to use this canard throughout discovery, first claiming they have produced everything and then later producing additional responsive documents. For example, on August 24, 2011 Plaintiffs requested certain categories of Defendants' financial documents that Defendants failed to produce. (*See* Plaintiffs' Motion, Ex. F.)  After Plaintiffs followed up on their August 24th request for further documents from Defendants in a meet-and-confer e-mail dated September 14, 2011, Defendants informed Plaintiffs they had "provided all the documents in our clients' possession, custody, and control responsive to the

enumerated items." (*See* Plaintiffs' Motion, Ex. H.)  Within days of this assertion, Defendants' counsel called to inform Plaintiffs' counsel that Defendants had located another box of documents in off-site storage that contained the requested documents, which Defendants then produced on September 29, 2011.  (*See* Affidavit of Paul G. Williams, dated December 27, 2011, a true and correct copy of which is attached hereto at Exhibit "D.")

Similarly, after Plaintiffs' counsel asked Defendant Roche during his deposition to produce missing UST Operating Agreements, Defendants belatedly produced those documents (which had been requested in Plaintiffs' initial document requests).  Plaintiffs are continuing to meet-and-confer to obtain documents missing from Defendants' document productions, but it is unlikely these issues will be resolved before the currently scheduled close of discovery. (*See, e.g.*, e-mail from K. Johnson to E. Marshall, *et al.*, dated December 23, 2011, a true and correct copy of which is attached hereto at Exhibit "E.")

### III.    Defendants' Opposition Brief Highlights The Need For An Extension Of The Discovery Period

The Court need look no further than Defendants' opposition brief for another example of their obstructive tactics necessitating a further discovery extension. Plaintiffs' Motion noted Defendants' belated disclosure of Barbara Duncan as a person with knowledge of Plaintiffs' contract claims.  (*See* Plaintiffs' Motion, p.

11.)   In their opposition brief Defendants state they are willing to make Ms. Duncan available for deposition on January 3, 2011.[2]   (*See* QMR Defs.' Opp'n, pp. 8-9.)   Defendants are also trying to take the deposition of Plaintiffs' accountant, Daniel Muchnick, on January 3, 2011.   *See id.*   In view of the importance of these depositions to Plaintiffs' (and Defendants' for that matter) cases, Plaintiff's lead counsel must attend both depositions but cannot be present at each of them on the same day.   This scheduling conflict, among others, and the compressed time remaining in which to take them in the holiday-shortened discovery period further emphasizes the plain need to extend the discovery period.

## CONCLUSION

As described more fully in Plaintiffs' Motion and for the reasons described above, numerous remaining discovery disputes remain to be resolved and further discovery, including key depositions, is legitimately required to permit all parties to prepare the case on the merits.   Realistically, those issues and mechanisms cannot be resolved and properly employed within the remaining discovery period.   Moreover, additional discovery needs to be taken on a variety of issues, many of

---

[2] Defendants are now attempting to characterize QMR's Chief Financial Officer, Barbara Duncan, as a mere records custodian to downplay her importance as a witness.  (*See* QMR Defs.' Opp'n, pp. 8-9.)  In Defendants' Supplemental Initial Disclosures they identified her as a witness with "knowledge regarding QMR's finances at the time of Plaintiffs' departure from QMR, including knowledge regarding certain figures pertinent to the formula contained in Section 8(b) of the Plaintiffs' Shareholder Agreements." (*See* QMR Defs. Opp'n, Ex. E, p. 3.)  These issues are central to the calculation of damages pursuant to Plaintiffs' breach of contract claim.

them raised by Defendants' belated production of documents and identification of a new witness.  Accordingly, Plaintiffs and Counterclaim-Defendants respectfully pray that the Court in its discretion grant their motion to extend the discovery period until April 5, 2012 under the schedule contained in Plaintiffs' Motion.  A proposed Order is attached hereto as Exhibit "A" for the Court's convenience.

Respectfully submitted this 27th of December, 2011

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP


By: /s/ David E. Spalten
David E. Spalten
Georgia Bar No. 669010
Paul G. Williams
Georgia Bar No. 764925
Kelly S. Johnson
Georgia Bar No. 394884

*Attorneys for Plaintiffs and Counterclaim-Defendants*

One Midtown Plaza - Suite 1150
1360 Peachtree Street, N.E.
Atlanta, Georgia 30309
404-260-6080
404-260-6081 (fax)